1997 ME 142

**ESTATE OF Antoinette BARIL.**

Supreme Judicial Court of Maine.

Argued April 9, 1997.
Decided June 30, 1997.

---

Fernand A. Martineau (orally), Portland, for defendant.

Larissa S. Pratt (orally), Smith, Elliott, Smith & Garmey, Saco, for appellees.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Yolande Maurice, the daughter of Antoinette Baril, appeals from the judgments entered in the York County Probate Court (Brooks, J.) allowing Antoinette Baril's will dated September 6, 1968, and appointing Harvey Baril as the personal representative of the estate, and from a summary judgment entered in favor of Harvey Baril and the Baril defendants on Maurice's separate complaint to determine heirs. On appeal, Maurice contends that the court erred by granting the petition for formal probate of Antoinette Baril's 1968 will, and in entering the summary judgment. We affirm the judgments.

[¶ 2] Antoinette Baril died on September 12, 1971, and was survived by her husband, Lucien J. Baril, Maurice, three stepchildren, and a sister, Marie Paule Paquette. At the time of her death, Antoinette Baril owned a cottage at Granny Kent Pond in Shapleigh, the property that generates this appeal. Two different wills of the decedent were offered for probate in 1971. The first will, dated September 6, 1968, left a small bequest to Maurice and the three stepchildren, and the rest, residue and remainder of her estate to her husband. In the second will, dated August 25, 1969, the Shapleigh cottage was left to Paquette, a share to her husband, and the remainder of her estate to Maurice.[1] Lucien Baril died on January 3, 1974.[2] No action was taken on either petition for the probate of the purported wills of Antoinette Baril until February 22, 1977, when the court ordered them filed. In 1980, the court restored the petition for probate of the 1968 will to the docket.

[¶ 3] Lucien Baril and his successors have continuously and exclusively occupied the Shapleigh cottage since Antoinette Baril's death. In the fall of 1994, the Baril defendants attempted to sell the cottage. A routine title examination revealed that the probate of Antoinette Baril's estate had never been completed. A formal petition to reinstate the probate of the 1968 will was filed in October of 1994 and was supplemented by a motion to substitute the 1994 petition for the 1971 petition. Maurice objected to the motion and filed a complaint to determine heirs, asserting, inter alia, that any probate of the 1968 or 1969 wills was barred by the provisions of 18 M.R.S.A. § 1555–56 (1981), and that she was the sole heir of Antoinette Baril. After the parties filed cross-motions for a summary judgment, the court concluded that the probate of the 1968 will was not time-barred. The court applied pre-Code law and pursuant to 18 M.R.S.A. § 1555 allowed Antoinette Baril's 1968 will and appointed Harvey Baril as the personal representative. The court also entered a summary judgment against Maurice on her complaint to determine heirs. This appeal by Maurice followed.

1. There is currently no proponent of the 1969 will, and the parties have stipulated that the petition for the probate of the 1969 will has been withdrawn.

2. Pursuant to his will, Lucien Baril's two sisters, Helena LaViolette and Laurianne Labrecque, inherited equal interests in the Shapleigh cottage. LaViolette and Labrecque conveyed their interest in the Shapleigh cottage to themselves and Lawrence Labrecque on July 3, 1986. Helena LaViolette subsequently conveyed her interest in the camp to Harvey Baril.

## I.

[¶ 4] Maurice contends that probate of the decedent's will is time-barred because the Probate Code requires that pre-Code law be applied and that the applicable provision of the pre-Code law, 18 M.R.S.A. § 1555,[3] *repealed by* P.L.1979, ch. 540, § 24–C (effective January 1, 1981), was misinterpreted by the court. The Baril defendants contend that the court correctly construed 18 M.R.S.A. § 1555. They argue in the alternative that the Probate Code must be applied and, pursuant to 18–A M.R.S.A. § 3–108(b)(Supp.1996), the probate of Antoinette Baril's will is not time-barred. We agree with the alternative contention of the Baril defendants.

[¶ 5] The Probate Code, 18–A M.R.S.A. § 1–101 through 8–401 (1981 & Supp.1996), is modeled on the Uniform Probate Code and became effective in 1981. See P.L.1979, ch. 540 (An Act to Establish the Maine Probate Code). The Probate Code includes an express provision regarding its effective date. Section 8–401 states that the Code takes effect on January 1, 1981, and further provides in part:

(b) Except as provided elsewhere in this Code, on the effective date of this Code:

. . . .

(2) The Code applies to any proceeding in Court then pending or thereafter commenced regardless of the time of death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this Code.

18–A M.R.S.A. §§ 8–401(b)(2) (1981) (emphasis added). The broad language in section 8–401(b)(2) provides for the application of the new Code to all pending proceedings unless, in the interest of justice or because applying the new Code is not feasible, circumstances not present here, the court determines that it should apply pre-Code law.

[¶ 6] Section 3–108(b) directly addresses the circumstances of this case, and provides:

For decedents dying before January 1, 1981, no informal probate or appointment proceeding or formal testacy or appointment proceeding ... may be commenced more than twenty years after the decedent's death....

18–A M.R.S.A. § 3–108(b) (Supp.1996). Antoinette Baril died in 1971. The petition to probate her 1968 will and to appoint a personal representative was filed prior to January 1, 1981, and was pending on the effective date of the new Code. Accordingly, the 1971 petition was timely pursuant to section 3–108(b).

[¶ 7] Conceding that the court's approval of Antoinette Baril's will must be affirmed if the Probate Code applies, Maurice argues that 18–A M.R.S.A. § 8–401(b)(4) providing for an exception to general applicability of the Probate Code[4] precludes the application of section 3–108(b) and requires that the Court apply pre-Code law. Maurice further contends that approval of the 1968 will is barred because section 1555, the applicable pre-Code provision, provides that no probate of a will shall be originally granted after twenty years from the death of any person. Because the probate proceeding dealing with Antoinette Baril's will was not completed within twenty years from the date of the her death, Maurice argues, it cannot be completed subsequent to 1991. We disagree that the

---

3. The statute in force before the adoption of the Probate Code in 1981 provided in part:

After 20 years from the death of any person, no probate of his last will or administration on his estate shall be originally granted except as provided in section 1556, unless it appears that there are moneys due to said estate from this State or the United States....

18 M.R.S.A. § 1555, repealed by P.L.1979, ch. 540, § 24–C (effective January 1, 1981).

4. 18–A M.R.S.A. § 8–401(b)(4) provides:

(4) An act done before the effective date in any proceeding and any accrued right is not impaired by this Code. If a right is acquired, extinguished or barred upon the expiration of the prescribed period of time which has commenced to run by the provisions of any statute before the effective date [of the Probate Code], the provisions shall remain in force with respect to that right.

pre–Code law is applicable to bar the probate of the 1968 will.[5]

[¶ 8] Title 18–A of the Maine Revised Statutes Annotated section 8–401(b)(4), on which Maurice relies to assert that pre-Code law applies, must be construed in light of the general mandate of section 8–401(b)(2) that the Code be applied to any proceeding, including those pending. The petition to probate Antoinette Baril's will was pending on the effective date of the Code and by its terms, section 3–108(b) would apply. To apply pre-Code law, 18 M.R.S.A. § 1555, would directly conflict with that express provision of the Probate Code. Section 1555, at least as Maurice urges us to construe it, requires the completion of a probate proceeding within twenty years from the date of the testatrix's death. The Code provision, however, is very different. Section 3–108(b) allows for a period of twenty years from the testatrix's death to commence a probate proceeding. The Code became effective in 1981 and by the express terms of section 3–108(b), that section became directly applicable to the pending proceeding to probate Antoinette Baril's will. We decline to construe section 8–401(b)(4) as requiring the application of law so many years beyond the effective date of the Code, the result of which is to nullify the provisions of section 3–108(b) that expressly apply to these proceedings. Accordingly, section 8–401(b)(4) does not affect this probate proceeding and does not trigger the application of 18 M.R.S.A. § 1555.

[¶ 9] Because we conclude that the 1968 will was correctly allowed, albeit for a different reason than that used by the Probate Court, there was no error in the entry of a judgment against Maurice on her additional complaints, the validity of which hinged on the will not being allowed.

The entry is:

Judgments affirmed.

---

5. Because we conclude that the substantive provisions of the Probate Code apply to the probate of Antoinette Baril's 1968 will, we do not address the Probate Court's conclusion that 18 M.R.S.A. § 1555 does not require that a probate proceeding be completed within 20 years.